[Criminal Nos. 491–492. Filed November 16, 1921.]

[201 Pac. 632.]

## PACIFIC GAS & ELECTRIC COMPANY, a Corporation, Appellant, v. STATE, Respondent. .

ELECTRICITY—STATUTE REGULATING ERECTION AND MAINTENANCE OF ELECTRIC POLES, WIRES, ETC., HELD VOID UNDER PREVIOUS ORDER OF CORPORATION COMMISSION.—Constitution, article 15, section 3, vesting power in the corporation commission to regulate the manner of placing, erecting, and constructing electric poles, wires, cables, and appliances, did not deprive the legislature of the power to pass a law relating thereto, if the Corporation Commission had not exercised the power so given it, but since the commission issued General Order No. 37, regulating the placing, erection, and maintenance of telephone, telegraph, signal, trolley, electric light, and power lines, Laws 1915, Append. p. 13, subsequently enacted by Legislature, relating to same subject matter, was void.

APPEAL from a judgment of the Superior Court of the County of Maricopa. R. C. Stanford, Judge. Judgment set aside with directions.

Messrs. Bullard & Jacobs and Messrs. Armstrong, Lewis & Kramer, for Appellant.

The Attorney General of Arizona, for the State.

ROSS, C. J.—Under date June 23, 1914, the Arizona Corporation Commission issued General Order No. 37, regulating the placing, construction, and maintenance of telephone, telegraph, signal, trolley, electric light and power lines within the state to be effective from and after July 1, 1914. Thereafter at the November, 1914, election an initiated measure "regulating the placing, erection and maintenance of electric poles, wires, cables and appliances, and providing the punishment for the violation thereof" was approved by the people, and on December 14, 1914, by the Governor proclaimed law. Under the initiative

23 Ariz.—6

measure reconstruction and new work were exempted from its terms for six months after its passage, and a period of five years after its passage was allowed in which to reconstruct all existing work in compliance with its provisions. Appendix Laws 1915, p. 13.

On July 28, 1919, the county attorney filed two informations in the superior court of Maricopa county, charging the Pacific Gas & Electric Company with violating certain provisions of the initiative measure. To each of the informations the defendant filed a special demurrer, asserting that the power and authority to regulate the placing, erecting, and maintaining of electric poles, wires, cables, and appliances was vested by section 3, article 15, of the state Constitution in the Corporation Commission exclusively, and that for that reason the initiative measure was unconstitutional and void. The demurrer was overruled, and after trial the defendant was found guilty. This appeal is from the final judgment of conviction and from the order denying a motion for a new trial.

There is no dispute as to the evidence. General Order No. 37, which was introduced in evidence, embodied the recommendations contained in the report of the committee on overhead line construction of the National Electric Light Association made at its Thirty-Fourth Convention, held in the city of New York, in May and June, 1911, and was in all essentials the same as the orders issued by the commissions of the states of Connecticut, Nevada, New Jersey, New York, Oklahoma, Oregon, Vermont, and Wisconsin, regulating the manner of placing, erecting, and constructing electric light and power lines. It also appeared without question that the defendant had in the erection of its poles, wires, cables, and appliances complied with the requirements and provisions of Order No. 37 as passed by the Arizona Corporation

Commission.   It also appeared that the construction complained of was a violation of the initiative measure and was new construction, having been made in the year 1919.

In opposition to the contention of the prosecution, not only the defendant has filed briefs, but the city of Mesa through its city attorney, and the board of governors of the Salt River Valley Water Users' Association, through its attorneys, under the permission of the court, also as *amici curiae,* filed briefs. It would seem that the Water Users' Association, the city of Mesa, and perhaps other cities of the state, as well as public utility companies, have constructed their electric light and power plants in conformity with the provisions of Order No. 37, and not in accordance with the provisions of the initiative measure. Just to what extent, and how, the provisions of the initiative measure differ from those of Order No. 37 is not made to appear.   If the passage of the initiative measure had the effect of abrogating Order No. 37, it follows that any municipality or public utility company, whose plant is not constructed, or was not reconstructed within five years after it became law, in accordance with its provisions, is guilty of a misdemeanor, and necessarily must be put to the expense of changing its plant to conform therewith.

It is the contention of the defendant that the ruling or decision in the case of *State* v. *Tucson Gas etc. Co.,* 15 Ariz. 294, 138 Pac. 781, is in point and decisive of the issue in its favor.   In that same connection it is the defendant's contention that the decision or ruling in the case of the *Arizona Eastern R. R. Co.* v. *State,* 19 Ariz. 409, 171 Pac. 906, is erroneous, and that this court should so hold.   The present Attorney General is in agreement with these views.   His predecessor, however, in a brief filed before the expiration of his term of office, took the position that the Ari-

zona Eastern case was a correct exposition of the law, and should be followed in this case. One of the *amici curiae* differs with both of these positions, and takes the stand that the decisions in the Tucson Gas case and the Arizona Eastern case are both correct, and that while the rulings therein bear upon and affect the question we now have before us, they are not decisive of it. In this we concur.

Because of the peculiar wording of the Constitution affecting the subject matter in the Tucson Gas case, we held the power to fix rates to be charged for gas by public utilities was exclusively vested in the Corporation Commission. In that case the only question involved was the rates and charges of public service corporations and the constitutional body to regulate them. It was what may be called a "rate case." The Arizona Eastern case involved the power of the legislature to regulate the number of cars in a train, and was clearly the exercise of the police power of the state for the safety, comfort, convenience, and health of employees of railroad companies. In this latter case it was held in effect, or negatively at least, that the Corporation Commission was vested with power to regulate the number of cars in a train under the grant to it in section 3, article 15, of the Constitution to "make and enforce reasonable rules, regulations, and orders for the convenience, safety, comfort, and health of employees of public service corporations," but that the duty to exercise such power was permissive and not mandatory. It was also held directly the granting or delegating of such power to the Corporation Commission did not divest the legislature of power in the interest of the safety and health of employees to limit the number of cars in a train. The logical effect of the conclusion reached in that case was that both the Corporation Commission and the legislature could lawfully and

constitutionally, in the exercise of the police power of the state, provide for the protection and safety of the employees of public service corporations. But in that case there was no conflict of authority, the Corporation Commission having failed to exercise its delegated powers to promulgate rules and regulations covering the subject matter, while the legislature had acted. It is interesting to note the language employed in the decision limiting its effect:

"It is perfectly clear that neither by direct language, nor by any necessary implication, from the powers granted to the Corporation Commission in section 3, is the police power in this state over a railway as a public highway, or over a railroad corporation as common carrier, vested *exclusively* in the Corporation Commission. It is equally clear that this power of the state over a railway as a public highway, and over a railroad corporation as a common carrier, may, by a plain mandate, and in the emphatic language of the Constitution, be exercised by the law-making department of the government. This is the extent of the matter that must now be determined." (Italics ours.)

In the present case both the Commission and the legislature have acted covering the same ground. Both unquestionably under proper circumstances may operate there—one, the Corporation Commission, under authority delegated to it by the Constitution, and the other, the legislature, under its inherent reserved powers. The very body, the people, that enacted the initiative measure to regulate the placing, erection, and maintenance of electric light and power plants had theretofore written and adopted a constitution into which they incorporated a provision authorizing the Corporation Commission to make and enforce rules, regulations, and orders, covering the same subject matter and the commission having acted in the premises, their principal, under every rule of agency,

is bound to respect the conduct and rights accruing thereunder.

Adopting the analogous rule that a state law covering a subject of federal cognizance is valid until the Congress invades that particular field when the state law is abrogated (*New York Central R. R. Co.* v. *Winfield,* 244 U. S. 147, Ann. Cas. 1917D, 1139, L. R. A. 1918C, 439, 61 L. Ed. 1045, 37 Sup. Ct. Rep. 546). Order No. 37 becomes the rule of action as applied to the facts of this case. The defendant acting under what appears to be a legal and subsisting order issued by the Corporation Commission in the exercise of a jurisdiction vested in it by the constitution, the court committed error in not sustaining the demurrer to the information and in finding the defendant guilty.

The judgment of conviction is therefore vacated and set aside, with directions that the information be dismissed and the defendant discharged.

McALISTER and FLANIGAN, JJ., concur.